Good morning. I'd like to reserve five minutes for rebuttal. My name is Jennifer Middleton of O'Melveny & Myers. I'm here representing Mr. Victoriano Gauna-Salazar. There's one critical issue in this appeal and it's a narrow one. Did the BIA fail to rule on issues that Mr. Gauna raised in his pro se brief before them? And the answer is yes. Mr. Gauna raised a number of issues in that brief and the permitted for the agency to do. So one of those issues was IJ bias. In his brief before the BIA, Mr. Gauna said that the IJ was biased against him. He said that the drug allegations against him smeared his reputation in the eyes of the immigration judge and thus made the immigration judge deny him relief. Yeah, and where does that appear in the brief? That's at administrative record 12 to 13. Yeah, so that does appear in the summary of argument. Is there anything in the statement of issues that should have alerted? In the statement of issues, he said whether the immigration judge violated the respondent's 5th and 14th amendments. What are we supposed to believe from that? That was his equal protection claim. It was his claim under the privileges and immunities clause. The cases say that it's not necessary for a petitioner to use the words due process claim. He doesn't have to be specific. But he ought to have some responsibility for advising the court what the problem is. The issue is notice and whether the brief put the BIA on notice of the issues Mr. Gauna was trying to raise. And in the cases, a number of cases, that this court... Did he ever say the IJ dislikes me or is biased against me or words of that sort? He said while in court, the respondent observed the immigration judges dislike of drug dealers when he read the charges off the notice to appeal. Is it a violation of due process to dislike drug dealers? Bias against a petitioner is, yes. What's bias about that? I mean, this drug dealer may, he may be biased against him, but I don't think you can get a lot of people saying we like drug dealers. I think that that's fair. But Mr. Gauna sitting in that hearing, listening to the IJ say these things to him, made him feel like the IJ was biased against him and that infected the proceedings. And that's an issue that he raised in his brief. And he raised it in a way that put the BIA on notice. Well, he begins that paragraph by saying the IJ engaged in an improper behavior during the removal proceedings. Now, there might be a whole litany of things that were that were took into consideration solely a charging document and discretion to deport Mr. Salazar. And that seems to be the thrust of his of his argument after that. I mean, he hasn't cited there are lots of cases that he cited. He's good. This is a very detailed brief. But none of those cases go to IJ bias. And they weren't required to. Well, the question, again, is one of is one of notice. It's one of notice to the BIA that that that we got alert the BIA as to what we want them to rule on. Right. And he he did in the way that's required of a pro se petitioner. In Agamemnon v. INS, which is one of the cases cited in the brief, the petitioner's argument on appeal was that he was deprived of a full and fair hearing by the IJ's requirement that his wife testify. And he didn't even use the phrase due process violation. And the court said that was OK because he stated the facts. The court said that he did protest the requirement that his wife testify at the hearing, explaining that she was in poor health and advised by her doctor not to make the trip. The court said that the Ninth Circuit construes these claims liberally. And that's not the only case where that happened. In Coronado Beholder, the BIA brief criticized the IJ, claiming that the IJ personally attacked him and appeared to have a personal vendetta against him. But in that case, at least at least you have some kind of a recitation of facts that would put that might put the BIA there's some development there. So we're to take from this that it was just inflection in his voice as he was the the the way that he looked at him and the way that he conducted himself during the hearing. Okay, well, okay. So where where does he talk about the way that he looked at him? He says that's in the summary of the argument. He says, yes, he's no in AR 12 to 13. He says that the drug allegations smeared his reputation in the eyes of the immigration judge and that's made the immigration judge deny. But that doesn't talk about how the immigration looked at it. It may be talking about that. It's hard to say it's a pro se petition. Well, a phrase in Yeah, again, pro se petitioner, but this is a pro se petitioners filed a detailed brief with lots and lots of case citations. It's very sophisticated. For somebody who's pro se, I don't know what he was doing. But either he ought to go to law school, or he got the help of somebody who did, because he seems he seems to know quite a bit about the law, doesn't he? He did write a long brief, and it has some statements of the law that are correct. But it's not required that he discuss every argument in detail in order to tell me what facts he put before the BIA that would indicate that the IJ was biased and the BIA should have addressed he explained that when he was in court in front of him, he observed the IJs just dislike of drug dealers. Okay, but that's, that's, then that's the voice inflection. Perhaps, perhaps, because it's only it's only it's the dislike of drug dealers when he read the charges. Well, he says while in court, the respondent observed the immigration judges dislike of drug dealers when he read the charges off the notice to appeal. And that's at that moment, the respondent knew that his chances of winning the case, but that doesn't necessarily I'm sorry, I know. But the only fact there is that the reading of the charges, it's not necessarily I mean, it doesn't say inflection in his voice. I'm trying to give him the benefit of the doubt here, counsel. So I'm willing to add those words there. Sure, of course. But I mean, I'm listening to you right now. And there's the inflection of your voice. But also you can see the looks on people's faces, and body language and things that that can come out when you're reading charges or when you're reading might have been helpful if he added some of those things, perhaps, but he wasn't required to in order to put the BIA on notice. In Abdul Rahman v. Ashcroft, the government argued that the petitioner failed to exhaust his IJ bias issue in the court held that while the appeal to the board did not frame the matter in due process terms in so many words, both his notice of appeal and his later brief to the board argued that the IJ impermissibly based her decision on her own speculative beliefs. This is the same type of thing that Mr. Ghana argued, the law is clear that he doesn't need to do it artfully. He doesn't need to do it as I would do it if I were his attorney at the time. His claims are construed liberally. And it put the BIA on notice because of the way he wrote it and the facts that he provided. The court held that to be enough. Are there are there other things in the record that you can point us to that you'd say, well, this supports the supports his his allegation and the BIA should have should have noticed these things. In the statement of issues, he said that whether the immigration judge violated his fifth and 14th Amendment rights when he violate when he ordered the respondent removed was one of the issues that put the BIA on notice that there were actually a little different question. I asked the question, if you're arguing this today, have you got other things in the record that you can point to that would support this claim are sort of obvious that the BIA might have taken notice of had it bothered to read the transcript? I'm sorry, just to make sure I understand your question. Are there things in the record before the IJ that I would have cited if I were on if you were right, if you were arguing the bias? So there are other things that you can point to that would support the bias claim that the BIA might have reasonably taken notice of. I mean, is this it? The reading of the reading of the charges? Well, the merits of the bias claim before the IJ isn't an issue and isn't something that the BIA considered and the ordinary remand rule states that we can't consider it here. If we send this back to you and give you an opportunity to brief it, what else are you going to say to the BIA that would demonstrate the bias of the IJ? I'm not certain at the moment. It's not something that we briefed because it wasn't right. We have a transcript. Do we have an audio? We don't have an audio. Okay, so inflection is going to be a problem here. That's correct. So is appearance, body language, facial expressions. So all of those things now are going to be things that are outside of the written record? Perhaps. Okay. And but he didn't tell the BIA about those. How could the BIA possibly address things that aren't that are not in the record and that he couldn't cite them to and he couldn't mention? Well, unfortunately, there are some things that happen in a courtroom that don't appear on the transcript. But if the BIA, if he's had an opportunity to brief it, I mean, what else should the BIA have said? They can't. There isn't anything it can say. It doesn't have anything in the record that it should have taken notice of on its own. Well, that is something that the BIA was supposed to consider and did not. We can't step into the shoes of the BIA and look at the evidence and see what they would have what they would have raised. That's not required. That's not right. But we do have his brief. He's not going to get a second shot at this. Right. Is he going to get oral argument before the BIA? He will not. So this is the sum total of his argument. The merits of the IJ bias claim is not at issue here. That's not something that we look to. In fact, when the Ninth Circuit rules on these IJ bias cases over and over again. Yeah. And this is if the brief is the sum total of it. This is everything that's on the record. And you can't cite me to anything else that's on the transcript that you would like to add to what he's put in his brief. There isn't anything else for the BIA to rule on here except this statement that he when he read the charges, they could tell the dislike of that. They could tell the dislike for drug dealers. You don't know how the BIA would have ruled on that. And that's not an issue for us to decide. Typically, at the Ninth Circuit, when the BIA fails to rule on an IJ bias claim, the court remands it as a matter of course. We can't rule on an issue that the BIA didn't have the chance to rule on originally. How they would have ruled is not part of this analysis. In case after case that this court just remands when the BIA didn't consider it. In Villanueva v. Holder, the court said because the BIA failed to address petitioner's contentions raised in his brief on appeal to the BIA, that the IJ's bias violated due process, we remand. They didn't look to the merits. In Torres v. Holder, the court said that because the BIA is not free to ignore arguments raised by petitioners, we remand. They didn't consider the merits. Same thing happened in Moniz-Lopez. Same thing happened in Coronado. If there are no other questions at this moment, I would like to reserve the rest of my time for rebuttal. You may do so. Thank you, Ms. Middleton. Good morning, your honors. May it please the court, I'm Rob Stalzer on behalf of Attorney General Lynch. Your honors, I think you put your finger on it. The question before us is what the board had notice of in petitioner's appeal brief. And we don't have to wonder. We can just look at the brief. It is true, as petitioner now argues, that the issue statement includes a very broad constitutional claim of a 5th and 14th amendment right, but we don't have to wonder what he was talking about. We can turn three pages later in his brief and he tells us he specifically lays out his claim, whether the IJ erred and violated the U.S. Constitution's 5th and 14th amendment rights, where he ordered respondent removed based on a trial court charging document and nothing else. OK, now we've got notice of something. It's not just some freewheeling IJ bias claim. It's a claim that the IJ erred because he used the charging document to find the petitioner removable. And this, of course, is well-trod ground. Petitioner, indeed, spends the next 10 pages discussing the categorical and modified categorical approach to determining whether an alien has been convicted of an aggravated felony, in this case, two aggravated felonies, and then whether that makes him ineligible for release. So there wasn't a question about an IJ bias claim here. He very specifically tells the board, I'm mad about the charging document. I think the immigration judge looked at the wrong documents because he didn't like me. And the board responded reasonably, no, it's entirely appropriate for the immigration judge to consider this document because the abstract of judgment, the minute order, says that he pled guilty to those two counts. That's why the immigration judge. If he said because the IJ didn't like me, isn't that sufficient to raise the issue of personal bias of the IJ against him? No, Your Honor, general contentions don't suffice even for a pro se alien. General contentions only suffice where they put the board on notice. And here, for example, Your Honor, the first sentence of his argument section of his brief starts, the immigration judge engaged in improper behavior during the removal proceedings. Now, if that sentence ended there, we could say, oh, perhaps there's an IJ bias claim here. But the sentence doesn't end there. He drills down further. The sentence goes on and says where he took into consideration solely a charging document. OK, so now we know what his claim is. The board can say, oh, OK, we're very familiar with these claims involving the modified categorical approach. Here's why we're ruling against you, which is exactly what they did. A petitioner in the brief also raised the claim that the board didn't address the asylum withholding and convention against torture applications below. OK, that's not true. The board actually mentions them. To say, petitioner has not raised any challenges with respect to the denial of those forms of relief, which is absolutely true. In his brief, petitioner never uses the word asylum. He mentions the withholding and convention against torture claim, but not to challenge them. Both of those claims were denied on different bases, by the way, but not to take issue with any of that denial, just to simply recount the facts. It's in the factual history section saying, hey, the board denied these forms of relief. He does, as petitioner points out now in his brief, in his issue statement, he says whether the immigration judge erred in not granting the respondent any other form of relief from deportation, which is a very general contention. It doesn't put the board on notice of anything. But again, we can turn the pages and see what is he talking about. Eleven times he says he's eligible for cancellation of removal in this brief. And so that's what the board wrote about and said, actually, OK, we see you're raising a cancellation claim. Here's why you're not eligible. The board was perfectly responsive to his brief. He says specifically, again, a specific form of relief. He was eligible for a Section 212H waiver. And again, the board specifically addressed the reliefs that he raised. That's what the board was required to do because that's what the board was on notice for. He specifically raised these issues and the board responded. Now, he didn't use precise legal terminology. Right. He says that these are constitutional violations. He says that these are prejudicial. He says that they are irrational, clear abuse of discretion. OK, these are legal questions. They're not abuse of discretion questions, but he doesn't have to use precise legal terminology. All he had to do was put the board on notice. The board heard him, answered him. And that's the end of it. I just want to leave you with two things, Your Honors. I won't belabor the point here. First, Petitioner was removable on four grounds, two aggravated felony charges, also a controlled substance charge and a firearms offense. He hasn't contested the firearms offense and the controlled substance offense. He does sort of contest, maybe, the aggravated felony charges. Certainly he did before the board, although he's abandoned it here. So his ultimate removability is not in question. Similarly, his ultimate ineligibility for all of the forms of relief he sought is also no longer in question, which means there's no need for any delay, Your Honors. You have all of the information in front of you necessary to fully resolve this case. There are no questions. Thank you, Mr. Stolzer. Thank you. Ms. Middleton, you have time reserved. I just wanted to start by saying that the BIA, if it had this case in front of it, could have ordered supplemental briefing. It could develop the facts. We don't know what they could do, and that's the point. The point is that this is an issue for the agency to decide in the first instance. That's the way that the system works, and this Court over and over again remands on that issue. I'm going to turn really quickly to what the government said about the Convention Against Torture and Asylum and Withholding of Removal claims. Mr. Ghani did raise those. He didn't do it artfully as he would have if he were an attorney, but that's not required. He said the IJ denied his application for a Convention Against Torture and Withholding of Removal, citing that he had not established to the Court that he would likely be subject to his native country of Mexico, and that's sufficient. And which page is this on? This is on page AR 14. And I'm sorry. I'm looking at the, I've got the, okay, let's see. That's in the factual history? Yes. Oh, wait a minute. That's just like saying I appeared before him on a particular day. The place where it is in the brief isn't relevant to the fact that the BIA... It's not in the summary of the argument. It's not in the issues, and it's not in the argument. Well, his statement is... How can we possibly fault the BIA for discussing that? His statement of issues did say whether the immigration judge erred in not granting respondent any other form of relief from deportation. Yeah, but then he abandons the argument. You can raise it in an issue and abandon it later on if you don't develop it. He doesn't abandon it. He mentions it later on, and his Notice of Appeal actually also stated as one reason for appeal. Is it mentioned on someplace other than AR 14? In, at AR 37 in his Notice of Appeal. Okay, but is there, in his brief, is there, these things can be, you can notice whatever you want to as an issue, but if you then abandon them in your brief, that's pretty well established as well. He did not use the word convention against torture, but the court, our court doesn't require that the term convention against torture be used. In Zhang v. Ashcroft, the petitioner explicitly mentioned in his brief to the BIA that he was requesting reversal of the IJ's denial of relief under the convention against torture. But the court found that this request was, that this, oh, he did mention that it was convention against torture like Mr. Ghana did, and the court found that it was sufficient to put the BIA on notice that he was challenging the convention determination. He raised the issue by naming the issue, and the court said, our precedent requires nothing more. In Singh v. Holder, the government argued that the petitioner merely asserted in the first paragraph of her brief that the BIA, to the BIA, that she appealed the IJ's denial of her cat relief. That was it. In the first paragraph, she said, I appeal the denial of my cat relief, and the court held that that was properly raised. The court said, we have previously held that a cat claim is exhausted as long as a petitioner mentions his or her cat claim in the brief because the BIA is on notice that the petitioner is challenging the IJ's cat claim. Mentioning it, mentioning it is all that is required, and that's what Mr. Ghana did here. But he did more than that, because he also included in his statement of issues a heads up that there were other forms of relief in his notice of appeal, that the failure to establish that he was undeserving of the waiver of relief of the forms sought was important. There's another thing that I wanted to discuss, which is the other issues that Mr. Ghana, removability and the other ways that his, the other findings by the BIA, those things are not right before us. They're not here for us to, they're not ready for us to decide because the BIA didn't decide them in the first instance. And under the ordinary remand rule, the BIA looks at these things first, and then it comes up to the Ninth Circuit. The Ninth Circuit repeatedly remands when the BIA didn't consider something, and that's what happened in this case, and that's the appropriate result here. Thank you very much. Thank you, Ms. Middleton. We thank both counsel for the argument, and the court acknowledges the substantial aid of O'Melveny and Myers. Thank you very much. Mr. Ghana was well represented. Thank you.
judges: Foote, Bybee, Bea